<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DANA KALINS,<br><br>Plaintiff,<br><br>v.<br><br>MOUNTAIN CREEK RESORT, INC.,<br><br>Defendant. | Civil Action No. 21-09194(JKS)(JBC)<br><br>**WHEREAS OPINION**<br><br>March 4, 2024 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court by way of Defendant Mountain Creek Resort, Inc's ("Defendant" or "Mountain Creek") motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. (ECF 37.) The motion was opposed and was decided without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[1] The Court has considered the parties' submissions and denies Defendant's motion for summary judgment[2]; and

**WHEREAS** this matter arises out of a personal injury Plaintiff Dana Kalins ("Plaintiff" or "Kalins") sustained while skiing at Defendant's property. (*See generally* ECF 1, Compl.) On March 7, 2021, Kalins suffered significant injuries when her ski struck a shovel following her

---

[1] Defendant's brief in support of its summary judgment motion will be referred to hereinafter as "Def. Br." (ECF 37-2); Plaintiff's opposition to Defendant's motion for summary judgment will be referred to as "Pl. Opp." (ECF 38); and Defendant's reply brief in further support of its motion for summary judgment will be referred to hereinafter as "Reply" (ECF 39).

[2] When considering a motion for summary judgment, the Court views all evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is only appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

dismount from a ski lift at Mountain Creek. (*See* ECF 38, Defendant's Statement of Material Facts ("Def. SOMF") ¶ 1.); and

**WHEREAS** on April 14, 2021, Plaintiff filed a Complaint against Defendant asserting a single count of negligence for the personal injuries she sustained. (Compl. ¶¶ 18-28.) Defendant answered the Complaint, (ECF No. 5), and following discovery, now moves for summary judgment, (*see generally* Def. Br., ECF 37.); and

**WHEREAS** Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Boyle v. Cnty. of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998) (citing *Peters v. Del. River Port Auth. of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994)). The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex*, 477 U.S. at 322-23. "[W]ith respect to an issue on which the nonmoving party bears the burden of proof . . . the burden on the moving party may be discharged by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A fact is only "material" for purposes of a summary judgment motion if a dispute over that fact "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute about a material fact is "genuine" if

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*[3]; and

**WHEREAS** under New Jersey law "[a]ctions against a ski operator for personal injuries sustained by a skier on its ski slope are governed by common-law negligence principles unless" the New Jersey ski statute applies. *Brett v. Great Am. Recreation, Inc.*, 652 A.2d 774 (N.J. Super. Ct. App. Div. 1995), *aff'd*, 144 N.J. 479 (1996) (citing *Reisman v. Great Am. Recreation, Inc.*, 628 A.2d 801 (N.J. Super. Ct. App. Div. 1993)); and

**WHEREAS** whether the statute permits liability turns on whether operators and skiers have complied with their statutory responsibilities. Notably, the purpose of the New Jersey ski statute "is to make explicit a policy of this State which clearly defines the responsibility of ski area operators and skiers, recognizing that the sport of skiing and other ski area activities involve risks which must be borne by those who engage in such activities and which are essentially impractical or impossible for the ski area operator to eliminate. It is, therefore, the purpose of this act to state those risks which the skier voluntarily assumes for which there can be no recovery." N.J. Stat. Ann. § 5:13-1(b); and

**WHEREAS** an "operator," under the New Jersey ski statute such as Mountain Creek, is any "person or entity who owns, manages, controls or directs the operation of an area where individuals come to ski." N.J. Stat. Ann. § 5:13-2(a); and

---

[3] Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1988) (nonmoving party may not successfully oppose summary judgment motion by simply replacing "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit."). Thus, if the nonmoving party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322-23) Moreover, the "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*, 477 U.S. at 247-48.

**WHEREAS** an operator is required to "[r]emove as soon as practicable obvious, man-made hazards." *Id.* § 5:13-3(a)(3). "A ski operator is expressly exempt from liability, however, for its failure to remove certain man-made hazards that are necessary for the normal operation of a ski resort: No operator shall be responsible to any skier or other person because of its failure to comply with any provisions of subsection 3.a. if such failure was caused by . . . the location of man-made facilities and equipment necessary for the ordinary operation of the ski area, such as transportation or grooming vehicles . . . or any other object or piece of equipment utilized in connection with the maintenance of trails, buildings or other facilities used in connection with skiing." *Id.* § 5:13-3(b); and

**WHEREAS** similarly, under the New Jersey ski statute, a skier must similarly abide by statutory duties as the operator. For example, "Every skier shall maintain control of his speed and course at all times, and shall stay clear of any snow grooming equipment, any vehicle, any lift tower, and any other equipment on the mountain." *Id.* § 5:13-4(c). "Each skier is assumed to know the range of his ability, and it shall be the duty of each skier to conduct himself within the limits of such ability, to maintain control of his speed and course at all times while skiing, to heed all posted warnings and to refrain from acting in a manner which may cause or contribute to the injury of himself or others." *Id.* § 5:13-5. Notwithstanding, a skier under the New Jersey ski statute is "not barred from suing an operator based upon assumed risks or for injuries to which he contributed if the operator violated his duties or responsibilities under the [ski statute]." *Murray v. Great Gorge Resort, Inc.*, 823 A.2d 101, 105 (N.J. Super. Ct. Law Div. 2003) (citing *Assembly Judiciary, Law, Public Safety and Defense Committee, Statement to Assembly*, No. 1650 (Nov. 20, 1978)); *see also* N.J. Stat. Ann. § 5:13-6 ("The assumption of risk set forth in section 5 shall be a complete bar of suit . . . unless an operator has violated his

4

duties or responsibilities under this act[.]"); and

**WHEREAS** based on the foregoing, the New Jersey ski statute balances operator immunity with the duties operators owe to skiers — denying immunity to operators who breach safety responsibilities. *Lipton v. Mountain Creek Resort, Inc.*, No. 13-4866, 2019 WL 4597205 (D.N.J. Sept. 23, 2019). Ultimately, if the factfinder finds that the injuries were proximately caused by the ski operator's violation of one or more of its statutory responsibilities, the skier is entitled to recover under principles of comparative negligence." *Brett*, 652 A.2d at 779; *see* N.J. Stat. Ann. §§ 5:13-3(b), 5:13-6. On the other hand, if a skier is found to have violated one or more of his statutory duties, the skier is deemed to have contributed to the injury, and the ski statute may apply and require application of comparative fault principles. *See supra*; and

**WHEREAS** as outlined in the expert opinions of Mark Petrozzi, Mountain Creek contends the shovel 1) was a piece of equipment used in the ordinary operation of the ski area; 2) the shovel was located in an off-trail area where skiers were not anticipated to ski; and 3) the shovel was open, obvious, and visible to any skier who was looking ahead and skiing in control. (ECF 37, Def. Br. At 25.) The shovel was not in the first place a "hazard" but because it was open, obvious, and visible; it was an "obstacle" that was located in an off-trail location. (*Id*.); and

**WHEREAS** Plaintiff disputes that Mountain Creek complied with its duty to remove man-made hazards from the "ski area" by its failure to remove the shovel that resulted in Plaintiff's injuries. (ECF 38, Pl. Opp. at 15-16.) According to Plaintiff, genuine material issues of fact thus remain as to whether the shovel was a man-made hazard and whether Plaintiff was "out of control."[4] (*Id*. at 17.); and

---

[4] Plaintiff contends that Defendant "misrepresents" her deposition testimony regarding the inherent danger of a shovel left on the ground which Plaintiff struck. (ECF 38, Plaintiff's Response to Defendant's Statement of

**WHEREAS** in light of the available evidence, there are factual disputes, including but not limited to, the purpose, positioning, and location of the shovel and, most importantly, whether it was an obvious man-made hazard. A reasonable jury may conclude under the circumstances that the location of the shovel near the ski lift was an obvious, man-made hazard which Mountain Creek had a duty to remedy. N.J. Stat. Ann. § 5:13-3a(3); *see Brett*, 677 A.2d 705, 718 (N.J. 1996) ("[T]he trial court properly left to the jury the question of whether an obvious, man-made hazard existed, given the fact-intensive nature of this issue and its relation to the balancing of fault."); *see also Brough v. Hidden Valley, Inc.,* 711 A.2d 382, 385-386 (N.J. Super. Ct. App. Div. 1998) (leaving the jury to decide if man-made, concrete box located off ski trail was inherent risk that skier must assume or a hazard that ski operator had a duty to remove or reduce).[5] Likewise, the record raises a material dispute as to whether Plaintiff complied with her duties under the ski statute to maintain proper control of her direction and speed.[6] N.J. Stat. Ann. § 5:13-4; therefore,

---

Material Facts ("Pl. Resp. SOMF.") ¶ 7.) She contests that her injuries were due to the shovel being left "extremely close to the area where skiers get off the ski lift" and not because she was "out of control" (*Id.* ¶¶ 10, 12-14.) Furthermore, Plaintiff disputes that she was out of control at the time of the incident. Rather, she contends that she "merely got her skis tangled" and was "intending to change direction and go left when she struck the shovel." (*Id.* ¶ 7.) Further, Plaintiff disputes that she was out of control because she contests "there is nothing unusual about a skier not getting there footing properly when coming off a ski lift and skiing a few feet to the left or the right." (ECF 38, *Pl. Br.* at 21.) Plaintiff argues that Defendant failed to remove the shovel in accordance with Defendant's own policies, the shovel served no "functional utility whatsoever because there is not evidence it was being used to shovel snow close in time to the incident." (*Id.* ¶¶ 18-20.) Finally, Plaintiff disputes that the location of the shovel was proper as Plaintiff states it was "laid flat extremely close to the skiing area" and would not have caused Plaintiff's injury. (*Id.* ¶¶ 8-9.)

[5] Defendant contends that "it cannot be assumed that jury members would have the requisite experience or sufficient knowledge regarding the safe and acceptable operation or management of a ski resort. A jury does not have the training, skill, or knowledge to determine what the required standard of care was and how it was breached." The Court disagrees. The issue of whether the shovel in question was an obvious, man-made hazard is exactly the type of issue the jury must decide. *Brough v. Hidden Valley, Inc.,* 711 A.2d 382 (N.J. Super. Ct. App. Div. 1998) ("as to the specific alleged man-made hazard in *Brett* (design of a ski slope on one side of a snow fence with an embankment, parking lot and telephone pole, into which plaintiff's toboggan had crashed, on the other side), the court observed 'the jury could have considered whether it was appropriate to locate the parking lot and the utility pole so close to the bottom of the hill or whether they could have been relocated and the flat area at the bottom of the hill extended. . . [and that] [m]ore efficient security patrols, or. . . a sign warning that tobogganing was unsafe [on the slope], might have reduced the hazard and thus 'removed' it for the purposes of the Ski Statute.'"

[6] Plaintiff testified that as a skier she was responsible to maintain the control of her course and speed. (Kalins Dep. Tr. 19:22-25. ECF 37, Def. Br. at 21.) Plaintiff further testified that at the time of the incident she was out of

**IT IS** on this 4th day of March, 2024;

**ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 37, is **DENIED.**

*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig: Clerk
cc: Parties
James B. Clark, U.S.M.J.

---

control "at that moment in time." (Kalins Dep. Tr. 85:7-9. ECF 37, Def. Br. at 22.) However, Plaintiff argues that despite this testimony, she was not "out of control" within the meaning of the New Jersey ski statute because she had "her speed controlled at all times and was not intentionally or recklessly trying to ski off the path." (ECF 38, Pl. Opp. at 17.)